## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**DEBRA FULLINGTON,**

**Plaintiff,**

v.                                                                    **Case No. 21-2287-DDC-KGG**

**ILLINOIS TOOL WORKS INC.,**

**Defendant.**

## MEMORANDUM AND ORDER

Plaintiff Debra Fullington alleges that defendant Illinois Tool Works Inc. terminated her employment because of her age and thus violated the Age Discrimination in Employment Act of 1967 (ADEA). Before the court is defendant's Motion for Summary Judgment under Fed. R. Civ. P. 56 (Doc. 44) and its supporting memorandum (Doc. 45). Plaintiff has responded (Doc. 53). And defendant has replied (Doc. 58). For reasons explained below, the court denies defendant's motion.

### I.       Background

The following facts either are stipulated in Pretrial Order (Doc. 41), uncontroverted, or, where controverted, are stated in the light most favorable to plaintiff, the party opposing summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### *Plaintiff's career at ITW*

Plaintiff began working for defendant Illinois Tool Works Inc. (ITW) on February 5, 2001, as a "buyer/planner." Doc. 45-1 at 2 (Fullington Dep. 12:11–16). She was 40 years old when she started working for ITW. *Id.* During nearly two decades of employment with ITW,

plaintiff worked as a buyer/planner at ITW's facility in Olathe, Kansas.  Doc. 53-3 at 5–16 (Fullington Dep. 55:9–66:16); Doc. 41 at 2 (Pretrial Order ¶ 2. a. 5.).

Plaintiff had two direct supervisors during her tenure at the ITW Olathe, Kansas facility: Robin Gannon and Cedric Burden.  Doc. 53-2 at 1 (Gannon Aff. ¶ 5); Doc. 53-1 at 1 (Burden Aff. ¶ 4).  Both Mr. Gannon and Mr. Burden observed that plaintiff was a high performing employee in her role as buyer/planner.  Doc. 53-2 at 2 (Gannon Aff. ¶ 9);  Doc. 53-1 at 1 (Burden Aff. ¶ 7).

On September 28, 2020, Mr. Burden, then ITW's plant manager and plaintiff's direct supervisor, informed her that ITW was eliminating her position due to the company's plans to restructure.  Doc. 45-1 at 13. (Fullington Dep. 209:1–24).  Plaintiff was 60 years old when ITW terminated her employment.  Doc. 41 at 2 (Pretrial Order ¶ 2. a. 1.).  Mr. Burden informed plaintiff that ITW was eliminating the buyer/planner position and replacing it with a "Strategic Planning Analyst" position.  Doc. 53-1 at 2 (Burden Aff. ¶ 8).  Plaintiff's termination package stated that "[d]ue to the pandemic of COVID-19 and our declining business, ITW Fluids North America has made a decision to end jobs."  Doc. 53-28 at 4 (Ex. 28).

### ITW's September 2020 Restructure

As a result of the September 28, 2020 restructure, ITW eliminated the following positions (corresponding age of terminated employee in parentheses)—Process Engineer (age 58), Machine Operator (37), Crater/Packer (64 and 49), Accountant (48), Accounting Specialist (41), Buyer (60), Regional Sales Manager (66, 65, and 59), Industry Segment Leader (63).  Doc. 52-12 (Ex. 30).  ITW created the following new positions and hired new employees for each role— Senior Sales Representative (62), Regional Sales Manager (44), Regional Sales Representative

(41), and Strategic Planning Analyst (49).[1]  *See* Doc. 45-7 at 5–6 (Neely 30(b)(6) Dep. 50:5–51:9); Doc. 45-8 at 2–3 (Pickens 30(b)(6) Dep. 16:25–17:9); Doc. 45-3 at 2 (Pickens Decl. ¶ 3).

ITW eliminated plaintiff's position—buyer/planner—and "upgraded the position" to strategic planning analyst.  Doc. 45-5 at 9 (Levine Dep. 26:1–2).  ITW then hired David James as a strategic planning analyst.  Doc. 45-3 at 2 (Pickens Decl. ¶ 3); Doc. 45-8 at 3 (Pickens 30(b)(6) Dep. 16:25–17:11).  Mr. James was born in 1971, making him "50 or 51" years old when hired. Doc. 45-8 at 3 (Pickens 30(b)(6) Dep. 17:12–14).

The average age of the 11 employees terminated in the September 2020 restructure was 55 years old.  Doc. 52-12 (Ex. 30).  Plaintiff was the only individual of eight employees in the ITW Olathe Operations Leadership Division terminated as a part of the restructure; the average age of that division was approximately 41 years old, and plaintiff, at age 60, was the oldest employee in the division.  Doc. 52-12 (Ex. 30).  Additionally, ITW terminated the three oldest employees in the ITW Pro Brand Sales Division (63, 65, and 66 years old) as a part of the restructure.  *Id.*

### Plaintiff's August & October 2019 Performance Improvement Plans

On August 15, 2019, about a year before ITW eliminated plaintiff's position in the restructure, Mr. Gannon, plaintiff's direct supervisor at the time, placed her on a 90-day performance improvement plan (PIP).  Doc. 52-6 (Ex. 15).  Sean Leonard, then ITW's Vice President and General Manager, directed Mr. Gannon to issue the PIP to plaintiff.  Doc. 53-16 at 2 (Pickens Dep. 13:15–25); Doc. 45-4 at 2 (Leonard Dep. 7:15–25).

Olivia Martinez, an engineer in strategic sourcing at ITW, worked closely with plaintiff and was involved in plaintiff's PIP.  *See* Doc. 53-17 at 7, 9 (Martinez Dep. 35:22–25, 51:4–5).

---

[1]       Ages are approximated based on birth year.

On September 23, 2019, plaintiff met with Ms. Martinez and told her she felt as though she was being singled out because of her age. *Id*. at 6 (Martinez Dep. 31:3–9). In the meeting, Ms. Martinez asked plaintiff about her age and retirement. Doc. 53-3 at 3 (Fullington Dep. 23:4–19). Plaintiff thought the questions were strange, and she responded that her goal was to work for as long as possible. Doc. 53-18 (Ex. 18).

On October 2, 2019, plaintiff sent ITW chief human resources officer, Katie Lawler, a letter of concern about her PIP and the work environment at ITW. Doc. 52-7 at 1 (Ex. 19). Plaintiff described a "dramatic change" in the work environment, characterizing it as "almost toxic" and "a very unhappy working atmosphere[.]" *Id.* Plaintiff voiced concerns over "undiscussed objectives" and "being held accountable for actions [she had] no control over on [her] objectives" in the PIP. *Id.* She requested "re-evaluation" and "specific goals[.]" *Id.*

Following this complaint, one of ITW's HR employees, Eunice Hawkins, reviewed plaintiff's PIP. Doc. 53-12 at 2 (Hawkins Dep. 18:8–20). Ms. Hawkins found the PIP was unfair to plaintiff because it was "not clear on the metrics" or written in a way that plaintiff could understand what her employer was holding her accountable to accomplish. *Id.* Ms. Hawkins then sent the PIP to John Keating, ITW's Segment Director, for review. *Id.* at 2–3 (Hawkins Dep. 18:17–19:4). Mr. Keating called the PIP "poorly worded," commenting that it was not "clear on the goals/expectations because nowhere does it reference what the current state/baselines are for each areas of improvement." Doc. 52-8 (Ex. 20). Mr. Keating suggested revisions of the PIP, calling for increased specificity in targets. *See* Doc. 52-9 (Ex. 21 Original PIP); Doc. 53-22 at 4 (Faz Dep. 37:6–11); Doc. 52-10 (Ex. 23 Revised PIP).

On October 23, 2019, Jesus Faz, plaintiff's supervisor at the time, issued a revised PIP. Doc. 53-22 at 2, 4 (Faz Dep. 8:13–17, 37:6–11); Doc. 52-10 (Ex. 23 Revised PIP). Mr. Faz

reported directly to Sean Leonard.  Doc. 53-22 at 3 (Faz Dep. 10:8–10).  The revised PIP raised

"On Time Delivery" goal from 94 to 95% and raised the "PO Accuracy Goal" from 99 to 100%.

Doc. 53-24 at 2–4 (Neely Dep. 61:14–23, 78:18–79:25); *see also* Doc. 52-9 (Ex. 21 Original

PIP); Doc. 52-10 (Ex. 23 Revised PIP).  After receiving this revised PIP, plaintiff again felt

singled out, so she voiced her concerns again.  Doc. 53-3 at 18–20 (Fullington Dep. 156:5–14,

162:16–163:10).  In the PIP meeting with Ms. Martinez, plaintiff raised concerns that she was

"being singled out," that she "thought [ITW was] trying to get rid of [her]" and she "thought [the

PIP] was unfair, and [she] thought it was [her] age."  *Id.*

Plaintiff eventually cleared the PIP.  Doc. 53-17 at 9 (Martinez Dep. 51:9–17).  But that

was not the end of Ms. Martinez and Mr. Leonard scrutinizing plaintiff's work performance.  On

February 24, 2020, Ms. Martinez messaged another ITW employee about plaintiff.  Doc. 52-11

at 5 (Ex. 25).  She asserted that "every single mistake [plaintiff makes] is going to be big now . . .

[I'm] not holding anything back" and that when she talked to Mr. Leonard about an issue, "he

assume[d] that was [plaintiff's] fault and he was ready to fight[.]"  *Id.*

### Other allegations of age discrimination at ITW

In June 2018, ITW management received two anonymous age discrimination complaints.

*See* Doc. 52-2 (Ex. 10); Doc. 52-3 (Ex. 11).  Many of the allegations of age discrimination

centered around former ITW Vice President and General Manager, Sean Leonard.  *See* Doc. 52-2

(Ex. 10); Doc. 52-3 (Ex. 11); Doc. 53-5 (Foster Aff.); Doc. 45-4 at 2 (Leonard Dep. 7:15–25).

The June 6, 2018 anonymous complaint alleged that Mr. Leonard had made "several derogatory

comments on the aging employees of ITW[.]"  Doc. 52-2 at 3 (Ex. 10).  The June 27, 2018

anonymous complaint, made against Sales Director Kevin Thompson, alleged that "Sean

Leonard and Kevin Thompson will be firing employees one by one that are 55 Plus with

Andrea's help . . . ."  Doc. 52-3 at 1 (Ex. 11).

David Foster, former National Sales Manager at ITW, worked under Mr. Leonard, and

complained of "ageism" and a "toxic work environment" under Mr. Leonard's leadership.  Doc.

53-5 at 2 (Foster Aff. ¶ 8).  Mr. Foster reported that at a national sales meeting in 2017 he had

heard Mr. Leonard say "too many gray hair[ed] people are here"[2] and observed what he believed

---

[2]     Defendant objects to this testimony about Mr. Leonard's statement, asserting it is hearsay.  *See* Doc. 58 at 7 n.15 (citing *Johnson v. Weld Cnty. Colo.*, 594 F.3d 1202, 1210 (10th Cir. 2010) (hearsay cannot defeat summary judgment)).  The court overrules this objection, concluding that this statement is not offered to prove the truth of the matter asserted.

     Statements offered not to prove the truth of the statements, but rather "offered for the effect on the listener . . . are generally not hearsay." *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434–35 (10th Cir. 1993).  *See* 30B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Evidence* § 6833 (2022 ed.) ("The most significant statements admitted under Rule 803(3) arise in a subset of cases where the motive for action is disputed . . . .  In these circumstances, evidence of the [declarant's] state of mind becomes tactically important and legally relevant.  Out-of-court statements of a then-existing state of mind can be critical to the fact finder seeking to understand the [declarant's] motivation for acting in a certain manner."); *see also Powell v. Laborers Union No. 1271*, 426 F. App'x 615, 621 (10th Cir. 2011) (explaining a hearsay problem exists only "if the comments were offered for the truth of the matter asserted therein" but if the racial comments are "relevant for the racial attitudes they revealed" they are "not hearsay"); *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1249–50 (6th Cir. 1995) ("The disparaging and racist comments allegedly made by [the supervisors] were not offered to prove the truth of the statements but to demonstrate the racial attitudes of [the supervisors] . . . Even if . . . the racial slurs were hearsay, they would be admissible under the hearsay exception for statements of the declarant's then existing state of mind."), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009); *Detroit Police Officers' Ass'n v. Young*, 608 F.2d 671, 693–94 (6th Cir. 1979) (explaining officers' testimony about reasons for police department's practices "as related to them by their former police supervisors" should not have been excluded as hearsay because "evidence of discriminatory purpose" was admissible under the Rule 803(3) exception to hearsay rule), *overruled on other grounds by Mich. Rd. Builders Ass'n, Inc. v. Milliken*, 834 F.2d 583 (6th Cir. 1987); *Roberts v. Henderson*, No. CIV 98-1315 MV/LFG, 1999 WL 35808245, at *4 (D.N.M. Dec. 15, 1999) ("[D]iscriminatory or harassing statements are not hearsay when they are not offered to prove the truth of the matter asserted.  Often such statements are offered to prove that the statements were made as evidence of discriminatory animus." (citations omitted)); *cf. McInnis v. Fairfield Cmtys., Inc.*, 458 F.3d 1129, 1143–44, 1143 n.13 (10th Cir. 2006) (explaining Rule 803(3) "does not permit the witness to relate any of the declarant's statements as to why [the declarant] held the particular state of mind, or what [the declarant] might have believed would have induced the state of mind" unless those statements are "not offered to prove the fact remembered or believed" and are offered for another relevant purpose (internal quotation marks and citation omitted)); *Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1264–66 (7th Cir. 1993) (explaining statement that otherwise would be hearsay could be used to show the declarant's discriminatory animus or intent, if otherwise relevant to plaintiff's claim).

was attempted "purg[ing]" of ITW's older employees through 2016 and 2017 company restructures.  Doc. 53-5 at 1 (Foster Aff. ¶¶ 4–5).  Mr. Leonard previously executed reductions in force (RIFs) in November 2016 and June 2017; between the two RIFs, ITW terminated 22 employees, only one under the age of 40.  Doc. 53-6 at 5–6 (Neely 30(b)(6) Dep. 36:19–37:12).

## II.    Legal Standard

Summary judgment is appropriate when the moving party demonstrates that "no genuine dispute" exists about "any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  When it applies this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party.  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).  "An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense."  *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'"  *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To meet this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'"  *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those

dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992)). To survive summary judgment, the non-moving party's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Id.* (citing *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999)).

Summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. To the contrary, it is an important procedure "designed 'to secure the just, speedy[,] and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

## III.    Analysis

Plaintiff asserts that defendant discriminated against her because of her age when defendant terminated her employment on September 28, 2020. She alleges that defendant's decision to terminate her position in its restructure was a pretext for age discrimination. Defendant counters, asserting that it is entitled to summary judgment against plaintiff's age discrimination claim because 1) the summary judgment facts do not establish a genuine issue on a prima facie case of age discrimination and 2) the summary judgment facts present no triable issue whether defendant's non-discriminatory reason for its action was a pretext for age discrimination. The court does not find defendant's arguments persuasive. And so, for the reasons explained below, the court denies the summary judgment motion.

### A.  Prima Facie Case

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]"  29 U.S.C. § 623(a)(1).  "[T]he ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (citation omitted).  Therefore, to establish an age discrimination claim under the ADEA, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."  *Id.* (citations omitted); *see also Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 947 (10th Cir. 2011) ("In other words, we must determine whether age was a but-for cause or the factor that made a difference." (citations and internal quotation marks omitted)).

The Supreme Court's articulation of an ADEA plaintiff's burden of proof in *Gross* does not displace the use of the *McDonnell Douglas* framework in ADEA claims.  *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1278–79 (10th Cir. 2010).  An ADEA plaintiff may meet her burden either by adducing direct evidence of age discrimination or by using the *McDonnell Douglas* burden-shifting framework.  *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225–26 (10th Cir. 2000); *Elmore v. Capstan, Inc.*, 58 F.3d 525, 529 (10th Cir. 1995) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801–805 (1973) and *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S 248, 252–256 (1981)).  Plaintiff here never claims that she has adduced direct evidence of age discrimination.  So, the court analyzes her claim under the *McDonnell Douglas* framework.

Under this approach, plaintiff bears the initial burden of production to establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If plaintiff establishes a prima facie case, the burden then shifts to defendant to articulate a facially nondiscriminatory reason for its actions. *See Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1533 (10th Cir. 1995). If defendant articulates a legitimate nondiscriminatory reason, the burden shifts back to plaintiff and she then must present evidence permitting a reasonable jury to conclude that defendant's proffered reason is pretextual. *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998). In other words, she must come forward with evidence supporting a reasonable finding that defendant's reason is "'unworthy of belief.'" *Id.* (quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)).

Under this framework, the Tenth Circuit has adopted a four-part test for establishing a prima facie case under ADEA. In 2011, in *Jones*, the Circuit held that a plaintiff must show: "'(1) she is a member of the class protected by the [ADEA]; (2) she suffered an adverse employment action; (3) she was qualified for the position at issue; and (4) she was treated less favorably than others not in the protected class.'" 617 F.3d at 1279 (quoting *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998)); *see also Hutchins v. Cessna Aircraft Co.*, 589 F. App'x 874, 876–77 (10th Cir. 2014). Later in the same year that *Jones* was decided, the Tenth Circuit explained the four elements slightly differently. It explained that an ADEA plaintiff "must ordinarily prove that: (1) she is within the protected age group; (2) she was doing satisfactory work; (3) she was discharged; and (4) her position was filled by a younger person." *Kosak v. Catholic Health Initiatives of Colorado*, 400 F. App'x 363, 366 (10th Cir. 2010) (citing *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004)); *see also Zoutomou v. Copper*, 550 F. App'x 647, 651 (10th Cir. 2013) (citing *Adamson v. Multi Cmty. Diversified*

*Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008)).  Then, in a 2012 opinion, the Tenth Circuit

held that a plaintiff establishes a prima facie case of age discrimination "by showing (1)

membership in a protected class and (2) an adverse employment action (3) that took place under

circumstances giving rise to an inference of discrimination."  *Daniels v. United Parcel Serv.,*

*Inc.*, 701 F.3d 620, 627 (10th Cir. 2012) (citing *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th

Cir. 2007)).

But under any of these formulations, the elements of a prima facie case "are neither rigid

nor mechanistic."  *Adamson*, 514 F.3d at 1146 (citation omitted).  Instead, "their purpose is the

establishment of an initial inference of unlawful discrimination warranting a presumption of

liability in plaintiff's favor."  *Id.* (citation omitted).  And, the burden of establishing a prima facie

case is "'not onerous.'"  *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005)

(quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  "This is particularly

true in an age discrimination case."  *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d

1038, 1056 (10th Cir. 2020) (citing *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1139 (10th Cir.

2000)).

Here, the parties agree for purposes of summary judgment and summary judgment only,

that plaintiff has established the first three prongs of the prima facie test.  That is:  (1) plaintiff is

a member of the protected age group, (2) she was doing satisfactory work, and (3) she was

discharged despite the adequacy of her work.  *See* Doc. 45 at 14–15.  But plaintiff and defendant

disagree whether plaintiff can meet her prima facie burden on the fourth prong.  Defendant

characterizes this prong as one asking whether "there is some evidence that the employer

intended to discriminate against her in reaching its RIF decision."  Doc. 45 at 14.  In contrast,

plaintiff characterizes the requirement as "simply showing that she was replaced by a younger person."  Doc. 53 at 32 (citing *Greene v. Safeway Stores, Inc.*, 98 F.3d 554 (10th Cir. 1996)).

Close review reveals that our Circuit, this court, and other district courts within the Tenth Circuit have treated the various iterations of this fourth prong as equivalents, using them interchangeably.  *See, e.g.*, *Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995) (reciting the fourth element of a prima facie case as "replaced by a younger person" and stating that it "may also be shown by circumstantial evidence that a plaintiff was treated less favorably than younger employees"); *see also Vincson v. Aurora Mental Health*, No. 06-cv-00373-MSK-MJW, 2007 WL 1491265, at *3 (D. Colo. May 21, 2007) (one of the prima facie elements requires plaintiff to show "[t]he termination took place under circumstances giving rise to an inference of discrimination (i.e., she was replaced by someone who was younger than 40)") (citation omitted)); *Lucas v. Miami Cnty. Bd. of Comm'rs*, No. 99-2400-KHV, 2000 WL 968806, at *10 (D. Kan. July 6, 2000) (stating the fourth element requires plaintiff to show that he was "replaced by a younger person (or discharged under circumstances giving rise to an inference of discrimination on the basis of age)" (citation omitted)).

Regardless of the precise wording used for this fourth requirement, the court concludes that the summary judgment facts present a triable issue on the prima facie case.  The next two subsections explain why.  First, plaintiff presents admissible evidence that a reasonable jury could find that she was replaced by a younger person.  Second, plaintiff has adduced admissible circumstantial evidence that a reasonable jury could find that ITW's RIF was discriminatory.

### 1.  Plaintiff's replacement at ITW

First, plaintiff has adduced admissible evidence that ITW replaced her with a younger person.  ITW claims that it eliminated plaintiff's job, the buyer/planner position.  Later however,

ITW representatives testified that ITW "upgraded the position" and recaptioned it as a strategic planning analyst job. Doc. 45-5 at 9 (Levine Dep. 26:1–2). This evidence, when construed in the light most favorable to plaintiff, could support a reasonable finding that ITW replaced plaintiff's position rather than eliminating it completely. ITW then hired David James for this new position as a strategic planning analyst. Doc. 45-3 at 2 (Pickens Decl. ¶ 3); Doc. 45-8 at 3 (Pickens 30(b)(6) Dep. 16:25–17:11). Mr. James was 50 or 51 years old when ITW hired him. *Id.* The admissible evidence could lead a reasonable jury to conclude that defendant created a new position to replace plaintiff's former position, then hired someone approximately 10 years younger than plaintiff to fill this position. A 10-year age difference could permit a reasonable jury to find that plaintiff was replaced by a younger person, giving rise to an inference of age discrimination. *See Whittington v. Nordam Grp. Inc.*, 429 F.3d 986, 995 (10th Cir. 2005); *see also Oglesby v. Hy-Vee, Inc.*, 214 F. App'x 829, 833 (10th Cir. 2007) (concluding that plaintiff had satisfied the fourth element of a prima facie case even though his replacement was only five years younger than plaintiff).

## 2. Circumstances suggesting age discrimination endemic to ITW's RIF

Next, plaintiff has adduced sufficient circumstantial evidence to permit a reasonable jury to find that defendant intended to discriminate against her in its RIF decision. In reduction in force cases, the plaintiff often is "simply laid off and thus incapable of proving actual replacement by a younger employee." *Branson v. Price River Coal Co.*, 853 F.2d 768, 771 (10th Cir. 1988). Consequently, the Tenth Circuit has modified the prima facie case of age discrimination in the RIF context. In this context, the fourth prong requires plaintiff to show "there is some evidence the employer intended to discriminate against [her] in reaching its [reduction in force] decision." *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1192

(10th Cir. 2006). A plaintiff may establish this requirement "through circumstantial evidence that the plaintiff was treated less favorably than younger employees during the reduction-in-force." *Id.* (quotation cleaned up); *see also Branson*, 853 F.2d at 771 (evidence that employer fired qualified older employees but retained younger employees in similar positions creates rebuttable presumption of discriminatory intent).

Applying this RIF standard to the summary judgment facts here, plaintiff still meets her burden of proof. She has come forward with admissible evidence that could enable a reasonable trier of fact to conclude that ITW's RIF was discriminatory. Plaintiff's circumstantial evidence can support three theories of a prima facie case of age discrimination in the RIF context.

First, plaintiff has come forward with admissible evidence permitting a reasonable trier of fact to conclude that plaintiff was treated less favorably than younger employees during ITW's RIF. *See Pippin*, 440 F.3d at 1192. Plaintiff was one of eight ITW employees in the "Olathe Operations Leadership" division considered in the RIF. Doc. 52-12 (Ex. 30). Plaintiff was the oldest of the group, and she held the only position that ITW selected for termination. *Id.*

Second, the summary judgment facts present a triable issue whether ITW retained a younger employee in a similar position, creating a rebuttable presumption of discriminatory intent in the RIF context. *See Branson*, 853 F.2d at 771. Plaintiff was the only buyer/planner at ITW in Olathe. Doc. 45-1 at 5 (Fullington Dep. 81:5–8). But, Ms. Martinez worked as an engineer in strategic sourcing for ITW, working in "purchasing or sourcing." *See* Doc. 53-17 at 3 (Martinez Dep. 11:18–23). Ms. Martinez's responsibilities included "revis[ing] costs and margins of the material," "follow[ing] the markets," and "understand[ing] how to purchase materials from the market at the correct time." *Id.* at 4 (Martinez Dep. 12:12–22). Both plaintiff's and Ms. Martinez's roles involved following markets and purchasing materials for

ITW.  *See id*.; Doc. 53-3 at 5, 10–11 (Fullington Dep. 55:20–25, 60:8–61:12).  The two worked

together in the Olathe Operations Leadership division.  Doc. 53-17 at 12 (Martinez Dep. 65:11–

16); Doc. 52-12 (Ex. 30).  Ms. Martinez was born in 1981, age 39 when the restructure occurred.

Doc. 53-17 at 2 (Martinez Dep. 10:5–8); Doc. 52-12 (Ex. 30).  Ms. Martinez was retained in the

restructure, but plaintiff wasn't.  *See* Doc. 52-12 (Ex. 30).  Thus, this evidence could permit a

reasonable jury to find that these circumstances give rise to an inference of discrimination.

Third, plaintiff has adduced additional circumstantial evidence enabling a reasonable

finding or inference that ITW intended for its RIF to discriminate based on age.  For instance,

plaintiff has accumulated admissible evidence that ITW's former Vice President and General

Manager, Sean Leonard, had a history of employees accusing him of age discrimination during

his time at ITW.  Plaintiff alleges that Mr. Leonard was a driving force behind ITW placing her

on a suspect PIP and in designing the restructure that ultimately eliminated plaintiff's job.

Plaintiff's evidence includes proof that Mr. Leonard directed plaintiff's placement on a PIP that

was designed to make it easy for plaintiff to fail.  And, plaintiff's evidence—if accredited by a

jury—shows that Mr. Leonard, after the PIP did not force plaintiff out of her job, had the idea to

include plaintiff's position in ITW's restructure.  *See* Doc. 53-27 at 2–3 (Hardison Dep. 21:21–

22:1).  Defendant tries to nullify this theory, arguing that Mr. Leonard was not involved in the

restructure because he left ITW before it undertook any formal restructure actions.  Doc. 45-4 at

2 (Leonard Dep. 7:15–25).  Defendant asserts that Mr. Leonard "did not make specific

recommendations to his successor, Steve Levine, about any restructure or which positions should

be included in any restructure."  Doc. 45 at 9.  Instead, ITW asserts, Gary Hardison, director of

operations, recommended eliminating plaintiff's buyer/planner position.  Doc. 45-5 at 6–7

(Levine Dep. 17:1–18:14).  This evidence doesn't permit summary judgment because plaintiff

presents evidence from which a reasonable jury could infer that Mr. Leonard still was involved in the decision even though Mr. Hardison recommended eliminating plaintiff's position. Mr. Hardison testified that it was "pretty much a decision made by [Mr. Leonard]" to "restructure the buyer position[.]" Doc. 53-27 at 2–3 (Hardison Dep. 21:21–22:1). So, ITW management who decided to include plaintiff's role in the restructure testified that doing so was originally Mr. Leonard's idea. *Id.*

The court concludes that ITW's arguments can't carry the day on summary judgment. To be sure, a reasonable jury could accredit ITW's explanations and thus effectively eliminate Mr. Leonard's role in the key decisions. A reasonable jury may well find that age discrimination allegations made against Mr. Leonard a couple of years before ITW eliminated plaintiff's job had nothing to do with plaintiff and cannot help support her case. But equally it's true that a reasonable jury could reject ITW's version of events and thus find that ITW intended for its RIF decision eliminating plaintiff's job to discriminate based on age. Plaintiff has presented sufficient admissible evidence—Mr. Leonard's history of age discrimination allegations, Mr. Leonard directing plaintiff's supervisors to put plaintiff on increasingly difficult performance improvement plans, and Mr. Leonard's suggestion to include plaintiff's role in ITW's restructure—to create a genuine dispute of material fact on this aspect of her prima facie case. Presented with this combination of facts, a reasonable jury could conclude that ITW's restructure occurred under circumstances giving rise to an inference of age discrimination.

This disagreement, the court concludes, has two reasonable outcomes. So, the court cannot decide it on summary judgment. Instead, it must permit a jury to decide this question at trial. For these reasons, the court finds that plaintiff has met her burden of establishing a triable issue on a prima facie case of discrimination under the ADEA.

**B.  ITW's legitimate non-discriminatory reason**

As explained above, once plaintiff has met her burden to establish a prima facie case of discrimination, the burden shifts to defendant to articulate a legitimate non-discriminatory reason for the challenged employment action.  *See Oglesby v. Hy-Vee, Inc.*, 402 F. Supp. 2d 1296, 1308 (D. Kan. 2005), *aff'd*, 214 F. App'x 829 (10th Cir. 2007) (citing *Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1533 (10th Cir. 1995)).  Here, defendant provides a legitimate nondiscriminatory reason for its decision to terminate plaintiff, *i.e.*, as a part of its restructure due to business needs. *See Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 985 (10th Cir. 1996) (finding "the company-wide reduction-in-force" a legitimate nondiscriminatory reason for decision to lay off plaintiffs).

In Spring 2020, ITW was experiencing production shortages.  Doc. 45-2 at 4 (Hardison Dep. 11:2–11).  They caused shutdowns and supply chain challenges and affected the state of ITW's business.  *Id.*  COVID-19 caused "severe impacts with raw materials" at ITW's Olathe facility creating an insecure supply chain.  *Id.* at 4–5 (Hardison Dep. 11:12–12:15).  This disruption led ITW to restructure the buyer position so ITW could manage supply chain operations more effectively.  *Id.* at 5 (Hardison Dep. 12:12–15).

Defendant insists that the overall restructuring decision was tied to "business needs and business rationale[,]" Doc. 45-6 at 4 (Neely Dep. at 113:20–25), and "related to the impact of [COVID-19] and declining business . . . and increase of certain businesses[.]"  Doc 45-7 at 2–3 (Neely 30(b)(6) Dep. at 13:20–14:5).  According to Steven Levine, a Vice President and General Manager at ITW, eliminating the buyer position and "upgrad[ing]" it to a position of strategic planning analyst "was needed to drive growth for the business."  Doc 45-5 at 9 (Levine Dep. 26:1–24).  Gary Hardison, who started as Director of Operations at ITW in April 2020, testified that the restructure of plaintiff's position resulted from supply chain issues and "related to

COVID-19." Doc. 45-2 at 2, 7 (Hardison Dep. 7:17–20, 27:12–25).  Mr. Hardison

recommended that Mr. Levine "chang[e] the positions from buyer to strategic planning analyst

[.]"  Doc. 45-5 at 6 (Levine Dep. 17:1–14).  ITW made the decision that it needed a new

"analytical role" with a different skill set of "analytics, reporting, running different systems[.]"

Doc. 45-6 at 2 (Neely Dep. 95:16–25).

The court concludes that defendant has met its burden at this second stage.  It has come

forward with legitimate, lawful reasons for its decision.  So, Part C, now turns to the pretext

issue.

### C.  Pretext

Finding that defendant has met its burden to proffer a legitimate nondiscriminatory

reason for terminating plaintiff's job, the burden shifts back to plaintiff to show that defendant's

proffered reason is pretextual.  *See Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1278–79 (10th

Cir. 2010).  The Tenth Circuit has held that "'once a plaintiff presents evidence sufficient to

create a genuine factual dispute regarding the veracity of a defendant's nondiscriminatory

reason, we presume the jury could infer that the employer acted for a discriminatory reason and

must deny summary judgment.'"  *Id*. at 1280 (quoting *Bryant v. Farmers Ins. Exchange*, 432

F.3d 2224, 1125 (10th Cir. 2005)).  "A plaintiff produces sufficient evidence of pretext when she

shows 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally

find them unworthy of credence and hence infer that the employer did not act for the asserted

non-discriminatory reasons.'"  *Id.* (quoting *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303,

1308 (10th Cir. 2005)).  Here, plaintiff presents two main arguments to demonstrate

contradiction in ITW's proffered legitimate reason (a neutral business driven restructure of the

company).  First, plaintiff argues that ITW did not actually eliminate plaintiff's position but merely renamed it to terminate her.  Second, plaintiff argues, defendant engaged in post-hoc justifications and inconsistent explanations for the challenged employment decision.

Defendant asserts that it did not select people to eliminate in the restructure; instead, it selected positions to eliminate.  Doc 45-5 at 11 (Levine Dep. 46:1-2).  Crucial to this argument then, is defendant's assertion that the strategic planning analyst position (the new position) is in fact different from the eliminated buyer position (plaintiff's former job).  ITW representatives testified that the restructure decision eliminating the buyer/planner role and adding the strategic planning analyst role was a strategic decision to support manufacturing operations more capably. Doc. 45-6 at 3 (Neely Dep. 108:13–23).  According to ITW, the buyer/planner and strategic planning analyst are different jobs that require different skill sets.  Doc. 45-5 at 7 (Levine Dep. 18:8–14); Doc. 45-2 at 3, 7 (Hardison Dep. 10:11–15, 27:21–25).  More specifically, Mr. Levine contrasts the two jobs in this way:  a buyer is "a very basic position that is handed data and then is required to purchase typically raw material from a supplier and make sure that raw material then comes back in time" while a strategic planning analyst "has to analyze the business, understand what [the company] need[s] for inventory, how much [does it] need to purchase, [does it] have the right price, [does it] have the right suppliers, and then also do the purchasing part directly with the supplier."  Doc. 45-5 at 9 (Levine Dep. 26:15–24).

Plaintiff asserts that defendant's restructure didn't eliminate her buyer/planner position at all.  Instead, she argues, ITW changed the name of her position to strategic planning analyst and used COVID-19 as a pretext to terminate plaintiff because of her age.  Cedric Burden— plaintiff's direct supervisor in the buyer/planner role and hiring manager for the strategic planning analyst role—gave testimony casting substantial doubt on ITW's proffered reason.  *See*

Doc. 53-1 at 2 (Burden Aff. ¶ 13).  He testified that "shortly after [plaintiff] was terminated, ITW posted a job opening for the Strategic Planning Analyst position."  *Id.* at 2 (Burden Aff. ¶ 9). And according to Mr. Burden, the "Strategic Planning analyst position was no different than the Buyer/Planner position."  *Id.* (Burden Aff. ¶ 11).  Mr. Burden also testified that plaintiff's termination was not related to business rationale, supply chain problems, or COVID-19, but instead simply a renaming of a position that did not require a different skill set of the eliminated buyer/planner position.  *Id.* (Burden Aff. ¶¶ 11–13).  This testimony presents evidence sufficient to create a genuine factual dispute about the veracity of the proffered reasons for defendant's RIF.

Plaintiff demonstrates sufficiently that there is a genuine dispute whether the two positions are different.  Both plant managers who supervised plaintiff testified that her responsibilities as a buyer/planner were:  "ensuring raw material purchase orders were placed and received in a timely manner; analyzing the business; understanding inventory needs; determining what quantities to purchase; assessing whether the price is right; assessing whether the business has the right suppliers; and purchasing product directly from suppliers."  Doc. 53-1 at 1 (Burden Aff. ¶ 5); Doc. 53-2 at 1–2 (Gannon Aff. ¶ 6) (using the same language Mr. Levine used to describe the new strategic planning analyst role, *see* Doc. 45-5 at 9 (Levine Dep. 26:10– 24)).  Both witnesses testified that the buyer/planner "position was an analytical role that required a skill set focused on analytics, reporting, and running different supply-chain management systems."  Doc. 53-1 at 1 (Burden Aff. ¶ 6); Doc. 53-2 at 2 (Gannon Aff. ¶ 8) (using the same language Mr. Neely used to describe the new strategic planning analyst role, *see* Doc. 45-6 at 2 (Neely Dep. 95:16–25)).  Mr. Gannon also testified that plaintiff, as a buyer/planner, was responsible for "following materials worldwide to make planned stock

decisions; negotiating with suppliers to get the optimal quality, cost and delivery; analyzing the market . . . ; developing preventative strategies; and performing cost variance updates to assure costing of each material is updated."  Doc. 53-2 at 2 (Gannon Aff. ¶ 7).

Plaintiff also demonstrates a genuine issue of pretext by highlighting defendant's post-hoc justifications and inconsistent explanations for the employment decision she challenges. Post-hoc justifications for plaintiff's termination that defendant never provided her when it laid her off constitute admissible evidence of pretext. *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1059 (10th Cir. 2020) (first citing *Plotke v. White*, 405 F.3d 1092, 1103 (10th Cir. 2005); then citing *Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 579 (7th Cir. 2003) ("One can reasonably infer pretext from an employer's shifting or inconsistent explanations for the challenged employment decision."); and then citing *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 56 (1st Cir. 2000) ("[A] method of establishing pretext is to show that [the employer]'s nondiscriminatory reasons were after-the-fact justifications, provided subsequent to the beginning of legal action.")).  Plaintiff's termination package asserted that "[d]ue to the pandemic of COVID-19 and our declining business, ITW Fluids North America has made a decision to end jobs."  Doc. 53-28 at 4 (Ex. 28).  Mr. Levine, who made the "ultimate business decision to restructure the buyer/planner position[,]" later testified that plaintiff's termination didn't result from declining business.  Doc. 58 at 8; Doc. 53-29 at 6 (Levine Dep. 29:7–9).  Plaintiff's supervisor, Mr. Burden, testified that the "termination of [plaintiff] was not related to business needs or business rationale during COVID-19."  Doc. 53-1 at 2 (Burden Aff. ¶ 13).

From these facts, a reasonable jury could find or infer that defendant's reason for terminating plaintiff—its RIF—was a pretext to conceal age discrimination.  Plaintiff has

provided sufficient evidence to raise a question of material fact about pretext.  This outcome precludes the summary judgment sought by defendant's motion.

**IV.**     **Conclusion**

For the reasons explained above, the court denies defendant's Motion for Summary Judgment (Doc. 44).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion for Summary Judgment (Doc. 44) is denied in full as explained in this Order.

**IT IS SO ORDERED.**

**Dated this 7th day of October, 2022, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
